UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

AMANDA WILDER, )
)
　　　Plaintiff, )
)
v. )　　　Case No. 4:24-CV-842-ZMB
)
FRANK BISIGNANO,[1] )
)
　　　Defendant. )

**<u>MEMORANDUM AND ORDER</u>**

Plaintiff Amanda Wilder brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). Doc. 1 ¶¶ 3,5. Because the Commissioner made no legal error and his decision is supported by substantial evidence, the Court affirms the denial of benefits.

**BACKGROUND**

**I.　　Five-Step Test Applied by the Commission**

When reviewing a claim under 42 U.S.C. § 405(g), the Commission applies a five-step sequential test. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Teabeau v. Kijakazi*, No. 4:21-CV-703-NCC, 2022 WL 4598672, at *2 (E.D. Mo. Sept. 30, 2022) (quoting *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005)). "The claimant has the burden of proof to show she is disabled through step four," with the burden of production shifting to the Commissioner at Step Five. *Moore*

---

[1] Frank Bisignano became the Social Security Commissioner in 2025. Pursuant to Federal Rule of Civil Procedure 25(d), Bisignano is substituted for his predecessor, Martin O'Malley. *See also* 42 U.S.C. § 405(g) (noting that suits brought under this section "shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office").

*v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "The ultimate burden of persuasion to prove disability, however, always remains with the claimant." *Young v. Apfel*, 221 F.3d 1065,1069 n.5 (8th Cir. 2000)

The first step is an evaluation of whether the claimant is engaging in work activity and whether any such work constitutes "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i).[2] If so, the claimant is not disabled. *Id.* Second, the Commissioner must examine the evidence to determine whether the claimant has a severe "impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing 20 C.F.R. § 416.920(c)). Third, the Commissioner evaluates the severity of the impairment, and if the impairment crosses a threshold listed in the regulations, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(iii), (d).

Fourth, if the impairment is found to be severe but does not meet the threshold required for a presumptive finding of disability in Step Three, the Commissioner assesses the claimant's "residual functional capacity" (RFC) to perform sustained work based on the evidence in the record. *Id.* § 416.920(e), 416.945; *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996) (stating the SSA's policy interpretations regarding the RFC assessment). Following the determination of the claimants' RFC, the Commissioner assesses whether the claimant can perform the requirements of their past relevant work. 20 C.F.R. § 416.920(f). If so, the claimant is not disabled. *Id.*

Finally, at Step Five, the Commissioner determines whether the claimant can make adjustment to other work, given the claimant's residual functional capacity, age, education, and work experience. *Id.* at 416.920(a)(4)(v). If the claimant can, they are not disabled. *Id.* Further, if

---

[2] The same five-factor test applies to claims for disability insurance as well as supplemental security income. *Compare* 20 C.F.R. § 416.920 (setting out the test for SSI), *with* 20 C.F.R. § 404.1520 (same for DIB). For ease of reference, all citations of 20 C.F.R. § 416.920 should also be construed as cross referencing § 404.1520.

a claimant reaches Step Five, the Social Security Administration must meet a limited burden of providing evidence "that other work exists in significant numbers in the national economy that [claimant] can do." *Id.* at 416.960(c)(2).

## II.    Factual Background

Wilder alleges she is a longtime sufferer of various ailments, including "degenerative disc disease, degenerative joint disease of right shoulder status-post arthroscopy, status-post trigger finger, osteoarthritis knees, fibromyalgia/chronic pain syndrome, migraines, occipital neuralgia, type II diabetes, obesity, and insomnia." Doc. 1 ¶ 6. She initially filed for DIB in August 2017 and filed for SSI five months later. Doc. 9-2 ("Tr.") at 1230–41. Wilder claimed she became disabled on July 1, 2016. Doc. 1 ¶ 5. After a hearing, the Administrative Law Judge (ALJ) issued an unfavorable decision, and Wilder appealed to the SSA Appeals Council. Doc. 20 at 1. The Council denied her request for rehearing, and Wilder further appealed to this Court. *Id*. At the request of the Commissioner, the Court remanded the case in March 2022. *Id.*; *see also Wilder v. Kijakazi*, No. 4:21-CV-76-RLW (E.D. Mo. Mar. 7, 2022), Doc. 31.

On remand, the ALJ reconsidered various topics and issued an updated decision. Doc. 18-1 ("Suppl. Tr."). In that decision, the ALJ concluded that Wilder had not been engaged in substantial gainful activity since the alleged onset date of her disability (Step 1), that her ailments were severe (Step 2), and that none of those ailments met the thresholds set out by the Commissioner for an automatic finding of disability (Step 3). *Id.* at 3874–86.

Ultimately, the ALJ determined that Wilder was disabled, but only since July 16, 2021—not July 1, 2016, as she claimed. *Id.* at 3872. Until that date, the ALJ found Wilder was able to perform sedentary work with additional limitations. *Id.* at 3878. Beyond this brief summary, the Court incorporates by reference the facts from Wilder's Statement of Uncontroverted Material Facts,

3

Doc. 20-1, and Bisignano's response, Doc. 21-1, along with the filed record and supplemental transcript, Docs. 9, 18. The Court will reference specific facts as needed below.

### III.    Procedural History

Wilder filed her Complaint in this matter on June 18, 2024. Doc. 1. The Commissioner filed the transcript containing most of the record in this case three months later. Doc. 9. The Commissioner further supplemented the transcript in January 2025, attaching the ALJ's decision. Doc. 18. Wilder and Defendants timely filed their respective briefs. Docs. 20, 21.

### LEGAL STANDARD

The Court will affirm the Commissioner's decision "if the ALJ made no legal error and the ALJ's decision is supported by substantial evidence on the record as a whole." *Cropper v. Dudek,* 136 F.4th 809, 813 (8th Cir. 2025) (citation omitted). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Id.* "Substantial evidence means more than a mere scintilla." *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

While the Court may "consider[] both evidence that supports that decision and evidence that detracts from that decision," it may not "reweigh the evidence presented to the ALJ" and must "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Eder v. Kijakazi*, No. 4:22-CV-64-SEP, 2023 WL 2571531, at *3 (E.D. Mo. Mar. 20, 2023) (quoting *Renstrom v. Astrue*, 680 F.3d 1057, 1063–64 (8th Cir. 2012)). This deferential review means that even if "substantial evidence exists in the record that would have supported a contrary outcome," the Court still must affirm the decision. *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (citation omitted). The Court may "disturb the Commissioner's decision only if it falls outside the available zone of choice." *Id.*

4

**DISCUSSION**

The issue presented in this appeal is whether the ALJ erred in constructing Wilder's RFC at Step 4. Wilder claims the ALJ failed to: (1) fully account for Wilder's severe impairments, (2) properly evaluate Wilder's fibromyalgia, (3) properly evaluate medical opinions provided by Wilder's doctors, and (4) consider evidence of Wilder's pain under SSR 16–3p. Doc. 20 at 2–15. Because the Court finds that the ALJ's opinion is supported by substantial evidence, it affirms the ALJ's decision.

**I.    The ALJ sufficiently considered Wilder's severe impairments.**

There is no dispute that the ALJ recognized Wilder's severe impairments, including her migraines, occipital neuralgia, and insomnia, but she ultimately concluded that these conditions responded well to conservative treatment. Suppl. Tr. at 3882. Wilder alleges that this determination failed to account for "the unique nature and impact of each condition" by grouping them together, including how they would affect Wilder's ability to "perform specific work-related tasks." Doc. 20 at 3. However, Wilder fails to identify any reversible error.

As an initial matter, "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). But a review of the record makes it clear that all three conditions were responding to treatment. *See* Tr. at 3013. Further, the ALJ did consider that Wilder's migraines, occipital neuralgia, and insomnia responded well to mediation prescribed to her— including medication for her insomnia, Botox injections for her migraines, and nerve blocks for her occipital neuralgia—even if relief was ultimately temporary. *See* Suppl. Tr. at 3881–82. Finally, the ALJ's purported failure to consider all of Wilder's conditions separately is not error in itself. *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021) ("[A] deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no

5

practical effect on the outcome of the case. . . . [t]he ALJ's brevity is not reversible error") (citation omitted). The Court finds the ALJ's assertion that Wilder's ailments responded well to conservative treatment to be appropriate. *Austin*, 52 F.4th at 730.

Wilder also asserts that the ALJ failed to account for the effects the symptoms of these conditions could have on her ability to work. Doc. 20 at 3–4. However, she overlooks that the ALJ noted inconsistencies between Wilder's assertions about concentration and memory with other statements she made indicating that she could "pay attention well, and could follow written and spoken instructions very well." Tr. at 1310, 2660; Suppl. Tr. at 3879. And despite Wilder's contention that the ALJ failed to consider her need to avoid loud noise, the ALJ limited her to a "Code 3" or moderate noise environment. Suppl. Tr. at 3878; *see Teabeau*, 2022 WL 4598672, at *3 (recognizing that a "code 3" noise environment is synonymous with the term "moderate"). Thus, the Court finds that the ALJ's decision with respect to Wilder's migraines, occipital neuralgia, and insomnia was supported by substantial evidence.[3]

## II.     The ALJ properly evaluated Wilder's fibromyalgia.

Wilder next argues that the ALJ improperly considered the absence of objective medical evidence to discount her subjective complaints related to fibromyalgia. Doc. 20 at 5. Wilder cites plenty of non-binding authority to support her argument, but only one easily distinguishable Eighth Circuit case. *See id.* at 5–6. There, the Eighth Circuit noted that an "ALJ may not discredit a claimant ***solely*** because her subjective complaints are not ***fully supported*** by objective medical evidence" *Brosnahan v. Barnhart*, 336 F.3d 671, 677–78 (8th Cir. 2003) (emphasis added). But the Court also emphasized that the ALJ in that case failed to specify "the physician's reports and findings upon which he relied" in making his determination. *Id.* at 677. And contrary to Plaintiff's

---

[3] The Court addresses the argument that the ALJ failed to give sufficient weight to Dr. Sturm's opinion in section III.

argument, an ALJ is not precluded from considering objective evidence in weighing subjective complaints of pain, even when the pain is caused by fibromyalgia. *See Swarthout v. Kijakazi*, 35 F.4th 608, 611 (8th Cir. 2022); *Grindley*, 9 F.4th at 631; *Miller v. Astrue*, 233 F. App'x 590, 592 (8th Cir. 2007). This approach makes good sense: if accepted, Wilder's argument would mean that the SSA would be required to ignore objective evidence in favor of purely subjective reports of pain. While it may make more sense for the SSA to defer to subjective reports of pain and require less objective evidence with conditions like fibromyalgia, it cannot be the case that the SSA must discount objective evidence altogether.

Here, the ALJ cited specific physicians' reports, which indicated that Wilder had a full range of motion in her back and neck, normal gait and range of motion in her right shoulder, and normal range of motion in her joints. *See* Suppl. Tr. at 3882. And the ALJ's reliance on that objective evidence is not problematic because she also considered the subjective evidence. *See* SSR 12-2p, 2012 WL 3104869 (July 25, 2012) (requiring that the ALJ "ensure there is sufficient objective evidence to support a finding that" a claimant has fibromyalgia before finding them disabled); *Pursell v. Kijakazi*, No. 4:21-CV-1019-AGF, 2022 WL 3042082, at *4 (E.D. Mo. Aug. 2, 2022) (finding that an ALJ did not err by considering both subjective and objective evidence in considering fibromyalgia); *Estes v. Kijakazi*, No. 4:20-CV-852-RLW, 2022 WL 782299, at *6 (E.D. Mo. Mar. 15, 2022) (same). Specifically, the ALJ highlighted Wilder's own statements that her medication was somewhat helpful and allowed her to remain functional. Suppl. Tr. at 3881. The ALJ also cited a May 2017 treatment note which indicated her complaints were primarily because of "fibromyalgia and pain syndrome" but also that "her complaints [were] under control." Tr. at 1484. This non-objective medical evidence supported the ALJ's finding. While the ALJ may not entirely discount Wilder's subjective complaints in favor of objective medical evidence, her

7

reliance on both objective evidence and Wilder's subjective testimony was certainly appropriate in constructing the RFC. Accordingly, the Court finds that the ALJ properly evaluated Wilder's fibromyalgia, and that the decision was supported by substantial evidence on the record.

**III.     The ALJ properly considered the opinion evidence.**

Wilder's next contention is that the ALJ failed to properly evaluate the opinion evidence of four doctors—three from state agency medical consultants and one from her treating physician. Doc. 20 at 6–12. The Court will first address the ALJ's evaluation of Drs. Navato, Weiss, and Nwodo, before turning to the evaluation of Dr. Sturm.

   *a.   Medical Opinions of Drs. Navato, Weiss, and Nwodo*

First, Wilder argues that the ALJ impermissibly dismissed the opinions of Navato, Weiss, and Nwodo together in a single paragraph—failing to adequately consider the "supportability" and "consistency" factors required by 20 C.F.R. § 404.1520c. Doc. 20 at 8–9. That regulation requires the ALJ to perform a "source-level" analysis, explaining for each source how they considered: (1) "the medical opinions or prior administrative medical findings from that medical source together in a single analysis" and (2) "the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision." 20 C.F.R. § 404.1520c(b)(1)–(2). "Supportability" is an examination of how well the "medical evidence and supporting explanations presented by a medical source" support the medical opinions. *Id.* § 404.1520c(c)(1). "Consistency" is a measure of how well medical opinions from different sources match. *Id.* § 404.1520c(c)(2).

Here, the ALJ considered the opinions of Drs. Navato, Weiss, and Nwodo in turn, performing the "source level" analysis required by 20 C.F.R. § 404.1520c(b)(1). All three doctors found Wilder able to perform ***more*** activities than the ALJ. The ALJ laid out the conclusions

reached by each doctor individually and then proceeded to conclude that all of their opinions were supported. Suppl. Tr. at 3883. However, the ALJ also found a lack of consistency across the opinions and opted for a more generous interpretation of the medical evidence, which limited Wilder to sedentary work (unlike Drs. Novato and Nwodo) and found she could not climb ladders, ropes, and scaffolds and could kneel and crouch only occasionally (unlike Dr. Weiss). *Id.* at 3878, 3883. The ALJ cited numerous medical findings that supported these conclusions, including Wilder's "tenderness in her back, pain and decreased range of motion of her neck, positive straight leg raises bilaterally, trigger points, had tenderness and pain with range of motion in the right shoulder, and effusion, tenderness, and crepitation in the left knee." *Id.* at 3883.

In sum, Wilder's argument that the decisions were insufficiently explained has no merit (and borders on frivolous, given that she disputes the rejection of opinions in her favor). She also cites no controlling authority to support her argument; indeed, in the Eighth Circuit, "the ALJ's brevity is not reversible error." *Cropper*, 136 F.4th at 815. While succinct, the ALJ's analysis addresses both supportability and consistency for each of the state doctors and found them unpersuasive in limited respects. Accordingly, the ALJ's opinion was adequately supported.

### b. *Medical Opinion of Dr. Sturm*

Wilder also argues that the ALJ, in violation of the Appeals Council's remand instructions, failed to properly evaluate Dr. Sturm's opinion for consistency with the record. Doc. 20 at 9. Wilder contests the ALJ's characterization of Dr. Sturm's opinion, alleging that she improperly discounted some of Dr. Sturm's findings, mischaracterized others, and failed to properly consider the nature of Wilder's chronic conditions. *Id.* at 9–11. Further, she contends that the ALJ failed to properly consider Dr. Sturm's treatment of her migraines and fully address why certain limitations were unpersuasive. *Id.* at 9.

The ALJ approached Dr. Sturm's opinion in a manner consistent with Eighth Circuit precedent. The Eighth Circuit has explicitly noted that a "conclusory checkbox form has little evidentiary value when it cites no medical evidence, and provides little to no elaboration." *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012). Despite Wilder's objections, the ALJ credibly identified Dr. Sturm's opinion as one such checkbox form. Tr. at 2004–07; Suppl. Tr. at 3883. Further, the ALJ specifically cited examples of the varying "intensity, persistence and limiting effects of symptoms" when crafting her RFC, despite Wilder's assertion that the ALJ failed to account for the inconsistent nature of chronic conditions. Suppl. Tr. at 3879. And the ALJ found Dr. Sturm's opinions inconsistent with the medical evidence in the record, citing times where Wilder presented normally with no evidence of acute distress. *Id.* at 3883. And the ALJ did discuss Dr. Sturm's evaluation of Wilder's migraines when formulating her RFC and, as noted above, assessed that they responded well to conservative treatment. *See* Suppl. Tr. at 3881–82.

Moreover, although Wilder suggests otherwise, *see* Doc. 20 at 12, in the Eighth Circuit, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *see also Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) (same). It is true, as Wilder notes, that the ALJ failed to discuss certain pieces of evidence—including complaints of numbness; tingling and weakness in her arms and legs; certain findings relating to Wilder's ability to stand, sit, and walk; and side effects to medications. Doc. 20 at 10–11. But "an ALJ is not required to discuss every piece of evidence submitted." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (citation omitted); *Cropper*, 136 F.4th at 815 (8th Cir. 2025) ("[T]he ALJ's brevity is not reversible error."). Like the Eighth Circuit in *Wildman*, the Court finds it "highly unlikely that the ALJ did not consider" all of Dr. Sturm's notes in her decision given her specific reference to that form and several relevant findings. *See*

10

596 F.3d at 966; Supp. Tr. at 3883. Particularly given the deferential standard of review, the Court finds that the ALJ's decision was supported by substantial evidence, and that the ALJ adequately considered the supportability and consistency factors in evaluating Dr. Sturm's opinion.

**IV.     The ALJ properly evaluated pain under SSR 16-3p.**

Wilder's final contention is that SSR 16-3p requires the ALJ to account for a claimants "persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, or referrals to specialists . . . [as] an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." Doc. 20 at 15. Wilder argues that the ALJ improperly disregarded evidence of her various attempts to obtain relief and several qualifying statements she made about her ability to engage in daily activities, and that the ALJ's explanation was inadequate to support a finding that she could sustain an eight-hour workday prior to July 16, 2021. *Id.* at 13.

Generally, if an ALJ analyzes a subjective complaint of pain, they are required to conduct a five-factor test under *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984), examining: "(1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions." *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (citing *Polaski*, 739 F.2d at 1322). While never expressly citing *Polaski*, the ALJ explicitly conducted an analysis under 20 C.F.R. §§ 404.1529 and 416.929. Suppl. Tr. at 3885. The Eighth Circuit has held that an analysis under those regulations is equivalent to *Polaski* if supported by substantial evidence—which it was here. *See, e.g.*, *Schultz,* 479 F.3d at 983; *Richie v. Kijakazi*, No. 4:20-CV-1402-NCC, 2022 WL 814795, at *6 (E.D. Mo. Mar. 17, 2022) (collecting cases). Further, and despite Wilder's assertions to the contrary, the ALJ explicitly contrasted Wilder's testimony regarding daily activities with

11

other subjective and objective evidence in the record. Supp. Tr. at 3879. Additionally, Wilder's reliance on *Herbert v. Heckler* is misplaced because the Eighth Circuit noted that the ALJ in that case, unlike here, "failed to set forth in his decision any inconsistencies in the evidence as a whole." 783 F.2d 128, 131 (8th Cir. 1986). The remainder of Wilder's arguments invite the Court to reweigh the evidence and come to a different conclusion, which it is prohibited from doing. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1361 (8th Cir. 2022).

## CONCLUSION

Accordingly, because substantial evidence supports the Social Security Commissioner's conclusions and there was no error in the application of the relevant legal standards, the Court **AFFIRMS** the Commissioner's decision.

So ordered this 13th day of March 2026.

ZACHARY M. BLUESTONE
UNITED STATES DISTRICT JUDGE